THE SEDGWICK CITY BANK v. THE SEDGWICK MILLING AND ELEVATOR COMPANY.

### No. 10813.

STOCKHOLDER'S INDIVIDUAL LIABILITY — *may be discharged by bona fide voluntary payment to judgment creditor of insolvent corporation, though no execution issued.* A stockholder in an insolvent corporation, against which a judgment has been rendered, may voluntarily discharge his statutory liability to its creditors, by making payment to one of them, without awaiting the issue and return of an execution *nulla bona* and the making of an order to enforce his liability; and if such voluntary payment is made in good faith it will operate as a bar to proceedings by other creditors to compel payment a second time.

Error from Harvey District Court. F. L. Martin, Judge. Opinion filed October 8, 1898. *Affirmed.*

*Bowman & Bucher*, for plaintiff in error.

*A. L. Greene*, for defendant in error.

DOSTER, C. J.   The Sedgwick Milling and Elevator
Company and the Newton Milling and Elevator Company
were corporations.   B. Warkentin was a stock-
holder in both of them.   The first-named company
was indebted to the one last named in the sum of
$2480, to recover which suit was brought and judg-
ment rendered in February, 1895.   Upon the recovery
of judgment execution thereon was issued and re-
turned unsatisfied.   The judgment creditor there-
upon instituted proceedings under the statute to secure
an order for the issuance of execution against War-
kentin for the payment of a balance due upon his
stock subscription to the Sedgwick Company and his
statutory liability in addition.   Upon the hearing of
the motion for execution the court made the follow-
ing order :

"It is therefore considered, ordered and adjudged
by the court here that the said Newton Milling and
Elevator Company have judgment lien against B.
Warkentin for said sum of $2480, and interest at
ten per cent.   That said B. Warkentin pay into this
court the unpaid balance of his said stock, to wit :
The sum of $800 to be applied to the satisfaction of
the judgment of the plaintiff herein [ Newton Milling
and Elevator Company] and it is further ordered by
the court that the said B. Warkentin pay into this
court for the purpose of the satisfaction of the judg-
ment the further sum of $1680, together with a suffi-
cient amount in addition thereto to pay the costs of
this action and interest on said judgment up to the
time said money shall be paid at the rate of ten per
cent."

This order was complied with, the payment was
made by Warkentin and the amount applied upon
the judgment creditor's claim.   Several months after-
wards the plaintiff in error also obtained judgment
against the Sedgwick Company.   Execution was is-

sued upon this judgment and was levied upon a number of small articles of property belonging to the judgment debtor, no one of them, however, possessing any considerable value. Upon the execution sale they realized in the aggregate forty dollars. The execution as to the remainder of the judgment was returned unsatisfied. The plaintiff in error thereupon also instituted proceedings against Warkentin for leave to issue execution against him in respect of his liability as a stockholder in the Sedgwick Company.

These proceedings were resisted upon the ground that he had previously discharged his stockholder's liability in the case brought against him by the Newton Company. To this it was replied that the proceedings in that case constituted no defense in this one, because, first, the sheriff's return of execution *nulla bona* in the first case was false, there being at that time at least forty dollars worth of property belonging to the execution debtor, as afterwards shown by the levy and sale of that amount in the second case ; and second, that the proceedings in the case of the Newton Company against Warkentin lacked conformity to the statutory requirements, in that a judgment for money was rendered instead of an order giving leave to issue execution. The judgment of the court below was in favor of Warkentin, and from it the Sedgwick City Bank prosecutes error to this court.

In *Hoyt v. Bunker* ( 50 Kan. 574, 32 Pac. 126 ), it was held that as between two judgment creditors of an insolvent corporation, each of whom was pursuing a stockholder in respect of his statutory liability, the one who fully complied with the statutory requirements as to creditors obtaining leave to issue execution would be preferred, as against the other who substantially departed from the forms of the law in prosecuting his claim. This, however, is not such a case

as that one. This is not a contest between rival judgment creditors each pursuing a common debtor. It is an effort by one judgment creditor to compel payment from the stockholder a second time, upon the ground that the other judgment creditor did not comply with the statutory forms in securing payment of his debt. There is such substantial difference between the two cases as to prevent the one from being a guide in the determination of the other.

In the case of *Baines v. Babcock* (95 Cal. 582, 27 Pac. 674), it was held:

"The return of the execution issued upon the judgment as unsatisfied is conclusive, in the equitable action against the stockholders, that the creditor has exhausted his legal remedy upon the judgment; and evidence offered by the defendants for the purpose of showing that the corporation was the owner and in the possession of a large amount of personal property, which might have been levied upon, is properly rejected by the trial court."

In the case of *Munger v. Jacobson* (99 Ill. 349), it was held that where it was known as a fact that the assets of the insolvent corporation were not sufficient to discharge the claims of a judgment creditor, proceedings under the statute might be instituted by him without the formality of first issuing an execution and procuring its return *nulla bona*. Without determining the soundness of either of these decisions as general legal principles, or their applicability as abstract legal propositions to the facts of cases generally, we nevertheless deem them applicable to the facts of the case in hand. No fraudulent conspiracy between Warkentin and the Newton Company was shown. It was not shown that the stockholder for any fraudulent purpose procured a false return of execution, nor the departure by the Newton Company from the statutory forms in the prosecution of its case. Attention, how-

ever, is called to the fact that he was not only a stock-holder in both of the milling companies, but was likewise a director in both, and also vice-president of the Sedgwick Company and general manager of the Newton Company, and that by accepting service for the first-named company in the suit against it by the other and by stipulating for an early hearing he ma-terially expedited it in the final collection of its claim, but that his course in such matter was fraudulent in fact is not claimed by counsel for plaintiff in error.

In view of the fiduciary relationship of Warkentin to the two Companies counsel for plaintiff in error cite the familiar doctrine that officers common to two corporations may not act in the interest of one as against the other. This doctrine has no applicability. Warkentin did nothing for his own company to the prejudice of the other. What he did was to the pre-judice of some of the creditors of the Sedgwick Com-pany, but not to the prejudice of the Company itself. He simply used his position as an officer of that Com-pany to secure an advantage to another Company of which he was also an officer, not as against the one Company but as against some of its creditors. It could not be material to the Sedgwick Company that Warkentin paid the amount of his liability as a stock-holder to one creditor or another. He, as a debtor, chose to pay one as against others and to that end used his power as an officer. In such case he exer-cised nothing but his undoubted right to prefer one creditor to the exclusion of others. No argument is made to us that the law may not permit preferences resulting in final benefit to the debtor, such, as in this case, the enhancement of the value of stock owned in a preferred creditor corporation. No argument is made to us that such preferences are invalid as upon a secret trust for the debtor. We have not therefore

chosen to import the question into the case, but, as counsel also seem to have done, have viewed the Newton Company in its capacity as a corporate entity, and not Warkentin as an ultimate beneficiary of the act of preference.

There being no fraud in the conduct of Warkentin, the conclusive answer to the complaint of plaintiff in error is the fact that the stockholder voluntarily paid his liability under the statute. He did not need to await the judgment against his company nor the return of execution against it. He did not need to inquire as to the extent to which the small and almost valueless articles belonging to his company could be used towards the satisfaction of the claims of its creditors. It was insolvent, and in such case a stockholder may discharge his liability by voluntary payment without awaiting the institution of proceedings against him.

"It is a defense to the stockholder to prove that his full statutory liability has already been paid by him. A stockholder who has voluntarily paid corporate debts to the full extent of his corporate liability is entitled to set up that fact, and when such payment was *bone fide* it is a bar to an action to collect any further amount." Cook on Stocks and Stockholders, § 225*b*.

The judgment of the court below is affirmed.